UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JUSTIN CARTER, on behalf of
deceased Plaintiff, Sarah A. Carter,

     Plaintiff,

v.                           Case No.:  6:22-cv-1438-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Justin Carter seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying the claim of his deceased spouse, Sarah A. Carter[1] for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a Supplemental Memorandum in Reply. As explained below, the decision of the

---

[1] The original plaintiff and claimant Sarah A. Carter passed away on October 23, 2022. (Doc. 21). On December 8, 2022, the Court permitted her surviving spouse, Justin Carter, to substitute as the plaintiff in this action. (Doc. 23). For clarity in this Opinion and Order, the term "Plaintiff" will refer to the original plaintiff and claimant, Sarah A. Carter.

Commissioner is **REVERSED AND REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or

substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R.

§ 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able

to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.    Procedural History

Plaintiff applied for a period of disability and disability insurance and for supplemental security income on December 16, 2013, alleging disability beginning on May 1, 2012. (Tr. 69, 70, 323-37). The applications were denied initially and on reconsideration. (Tr. 69, 70, 03, 94). Plaintiff requested a hearing, and on June 21, 2016 and September 26, 2017, hearings were held before Administrative Law Judge James Andres ("ALJ"). (Tr. 55-68, 892-910). On November 13, 2017, the ALJ entered a decision finding Plaintiff not under a disability from May 1, 2012, through the date of the decision. (Tr. 22-31). On July 30, 2018, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4).

Plaintiff appealed the decision to the United States District Court and on December 9, 2019, the Court granted an unopposed motion for entry of judgment with remand. (Tr. 1022-23). The Court reversed the final decision of the Commissioner and remanded the action to the Commissioner. The Court directed:

> To enter a judgment with a reversal and remand of the cause to the Commissioner to instruct an Administrative Law Judge to evaluate opinions from treating physicians Dr. Jay Olsson and Dr. Gary Weiss, reviewing consultant Dr. Robert F. Schilling, and Nurse Practitioner Lorraine John; re-assess the residual functional capacity; obtain supplemental evidence from a vocational expert to clarify the effect of assessed limitations on the claimant's ability to perform other work in the national

economy, if necessary; take any further action to complete the administrative record; offer the claimant the opportunity for a hearing; and issue a new decision. *See Shalala v. Schaefer*, 509 U.S. 292 (1993); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

(Tr. 1022-23). On remand, the Appeals Council remanded the case to the ALJ on April 28, 2020. (Tr. 1031-32).

The ALJ held hearings on October 7, 2020 and February 10, 2021. (Tr. 967-1021). On February 26, 2021, the ALJ entered a decision finding Plaintiff was not disabled before June 1, 2019, but became disabled on that date and had continued to be disabled through the date of the decision. (Tr. 935-55). The ALJ also made a separate finding that Plaintiff was not under a disability at any time through March 31, 2017, the date last insured. (Tr, 954). On June 15, 2022, the Appeals Council denied Plaintiff's Exceptions. (Tr. 911-15).

Plaintiff initiated the instant action by Complaint (Doc. 1) filed on August 12, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 20).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2017. (Tr. 938). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2012, the alleged onset date. (Tr. 938). At step two, the ALJ found that since the alleged disability onset date, Plaintiff had the following

severe impairments: "Cervical Spine Degenerative Disc Disease, Lumbar Spine Degenerative Disc Disease, Status-Post Lumbar Spine Surgery, Left Carpal Tunnel Syndrome, Right Leg Meralgia Paraesthetica, Tachycardia, Congestive Heart Failure, Hypertension, Asthma, and Obesity." (Tr. 938). At step three and prior to June 1, 2019, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 942).

Before proceeding to step four and prior to June 1, 2019, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that prior to June 1, 2019, the date the claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a). The claimant could never climb ladders, ropes, or scaffolds but could perform all postural activities on an occasional basis. It was necessary for the claimant to avoid unprotected heights and moving mechanical parts. She could tolerate occasional exposure to extreme heat, extreme cold, vibration, humidity, wetness, and pulmonary irritants.

(Tr. 945).

At step four, the ALJ determined that Plaintiff was not capable of performing her past relevant work as a child-care leader and nurse aide. (Tr. 951-52). At step five, the ALJ found that prior to June 1, 2019 and considering Plaintiff's age (a younger individual between the ages of 18-44 on the established disability onset

date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 952). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)   order clerk, DOT 209.567-014,[2] sedentary, unskilled, SVP 2

(2)   charge account clerk, DOT 205.367-014, sedentary, unskilled, SVP 2

(3)   document preparer, DOT 249.587-018, sedentary, unskilled, SVP 2

(Tr. 953). The ALJ concluded that Plaintiff was not disabled prior to June 1, 2019, but became disabled on that date and continued to be disabled through the date of the decision. (Tr. 953-54). The ALJ also concluded that Plaintiff was not under a disability at any time through March 31, 2017, the date last insured. (Tr. 954).

## II.   Analysis

On appeal, Plaintiff challenges whether the ALJ properly weighed the medical opinions of record based on an adequate rationale and substantial evidence at each step of the sequential evaluation process. (Doc. 31, p. 25). Plaintiff argues that the RFC conflicts with the opinions of Plaintiff's treating pain management physician, Jay Olsson, D.O., and treating neurologist Gary Weiss, M.D (Doc. 31, p. 25).[3]

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

[3] Plaintiff also challenges whether the ALJ properly considered treating Nurse Practitioner Lorraine John's opinion. (Doc. 31, p. 25). Although raised, Plaintiff does not address this issue in the brief. (Doc. 31). Plaintiff subsequently discussed the issue in the Reply (Doc. 34), but the Reply may not assert any new legal theory or any new claim. (Doc. 19, p. 5). Thus, the Court will not

### A.    Standard for Evaluating Treating Physicians' Opinions

For disability cases filed before March 27, 2017[4] – such as this one – at step

four, an ALJ must properly consider treating, examining, and non-examining

physician's opinions and weigh these opinions and findings as an integral part of

the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp.

2d 1254, 1265 (M.D. Fla. 2012). Whenever a physician offers an opinion about the

nature and severity of a claimant's impairments—including the claimant's

symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the

claimant can still do—the ALJ must state with particularity the weight given to the

opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176,

1178-79 (11th Cir. 2011). Without such an explanation, "it is impossible for a

reviewing court to determine whether the ultimate decision on the merits of the

claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662

F.2d at 735).

The opinions of treating physicians are entitled to substantial or considerable

weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d

1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause

---

address the arguments on Nurse Practitioner Johns. In any event, as this matter is being remanded, the Court will direct the Commissioner to reconsider Nurse Practitioner Johns' opinion.

[4] For disability cases filed after March 27, 2017, new regulations apply and the ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. *See*   20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a).

exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

Even though examining or non-examining doctors' opinions are not entitled to deference, an ALJ is still required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

## B.    Weight of Physicians' Opinions

Plaintiff had severe impairments of cervical spine degenerative disc disease, lumbar spine degenerative disc disease, status-post lumbar spine surgery, left carpal tunnel syndrome, right leg meralgia paraesthetica, tachycardia, congestive heart failure, hypertension, asthma, and obesity. (Tr. 938). Her medical records

conclusively show that she had complained of back pain, requiring medication and other modalities since at least May 1, 2012, her alleged onset date. (Tr. 606-609, 619-21, 635-77, 685-743, 763-825, 828-47, 865-84, 1340-1448, 1462-75, 1498-1500, 1540-48, 1825). Whether Plaintiff's back pain was disabling is no longer at issue because the ALJ found her disabled from June 1, 2019. (Tr., 954). What remains at issue is whether the ALJ properly afforded little weight to the opinions of two of Plaintiff's treating physicians – Pain Management Specialist Jay E. Olsson, D.O., and Neurologist Gary Weiss, M.D. – and whether he properly afforded "greatest weight" to the opinion of non-examining physician Gilberto Munoz, M.D. (Tr. 948, 949, 950). Because the ALJ compared Dr. Munoz's opinion to those of Dr. Olsson and Dr. Weiss, the Court begins with Dr. Munoz's opinion.

### 1.    Dr. Munoz

Dr. Munoz testified at the February 10, 2021 hearing as a non-examining medical expert. (Tr. 979). He reviewed the medical records in the transcript. (Tr. 979-80). He determined that Plaintiff had cervical spine disc disease, lumbar spine disc disease, post-surgical procedure of the lumbar and thoracic spine, mild left carpal tunnel syndrome, right let meralgia paresthetica,[5] tachycardia, thyroid,

---

[5] Dr. Munoz explained that meralgia paresthetica involved issues with the nerve in Plaintiff's right thigh and even though an ultrasound did not reveal any nerve damage, this condition was characterized by pain. (Tr. 980).

hypertension, congestive heart failure, asthma, and obesity. (Tr. 980-81). As of June 1, 2019, Dr. Munoz found Plaintiff equaled Listing 1.04. (Tr. 981-82).

Dr. Munoz determined the disability onset date of June 1, 2019, as six months before the date that Plaintiff was placed with a spinal cord stimulator. (Tr. 981, 1332). Dr. Munoz explained, "Your Honor, the other thing I wanted to tell you is that because this condition meet[s] or equal[s] the listing and it's a very complicated case, most likely this [meaning meeting a Listing] was present six months previous to [the date the spinal cord stimulator was placed]. We're using June 1st of 2019 [as the disability onset date]." (Tr. 982). He found Plaintiff would equal Listing 1.04, not meet it because of a lack of MRI findings to support a listing. (Tr. 983). Dr. Munoz acknowledged that Plaintiff had a record of severe pain with multiple complaints post laminectomy, and the fact that she was referred for a spinal cord stimulator, meant that the pain could not be controlled. (Tr. 983).

The ALJ asked about the exams at Health First Viera Hospital that showed continuous full range of motion and no neurological deficits in 2018, 2019, and 2020. (Tr. 983). Dr. Munoz responded that these records were one reason why he chose the spinal cord stimulator placement because it was a last resort type of treatment. (Tr. 983). Dr. Munoz found that before June 1, 2019, Plaintiff could perform work at the sedentary exertional level with limitations. (Tr. 982-83).

On questioning by Plaintiff's counsel, Dr. Munoz admitted that Plaintiff's pain would increase with any physical activity, such as working full time. (Tr. 985). Dr. Munoz reiterated that this was a complicated case and acknowledged Plaintiff had been in treatment for a long time, but the records showed no nerve root compression. (Tr. 986). While Dr. Munoz admitted he could not testify on "how the pain was," he also admitted that it was severe as shown by the treatment received and again stated that the pain would increase with physical activity. (Tr. 986). He found it hard to establish the severity of Plaintiff's complaints when there were days her status was normal and there was no MRI that showed nerve root compression. (Tr. 987).

The ALJ afforded great weight to Dr. Munoz's testimony. (Tr. 946). He found Dr. Munoz had the opportunity to review the longitudinal medical evidence of record. (Tr. 946). The ALJ found Dr. Munoz based his opinion on the objective evidence. (Tr. 946). The ALJ also determined that "[a]ccording to Dr. Munoz, the objective evidence prior to June 1, 2019 is simply unconvincing." (Tr. 946).

### 2.   Dr. Olsson

From at least January 2012 to September 2020, Dr. Olsson's office treated Plaintiff by prescribing various pain medications and also referred Plaintiff for other types of treatment. (Tr. 606-609, 619-21, 635-77, 685-743, 763-825, 865-84, 1340-1448, 1462-75, 1498-1500, 1540-48). Plaintiff visited Dr. Olsson's office for exams

generally once a month during these eight years. (Tr. 606-609, 619-21, 635-77, 685-743, 763-825, 865-84, 1340-1448, 1462-75, 1498-1500, 1540-48).  Without summarizing each exam, generally the examiners found: normal gait; decreased range of motion with pain in the back flexion and extension; muscle strength lesser in the right leg and hip flexors, quadriceps, and ankle; and hypoesthesia in the right L2, L3, L4, and L5 distribution. (*See e.g.*, Tr. 625, 1436). Later, Plaintiff's range of motion was decreased with side flexion in the neck. (Tr. 1436).

On February 19, 2016, Dr. Olsson completed a Lumbar Spine Medical Source Statement and noted that the restrictions detailed in the form began on June 1, 2012 and were still in effect to the best of his knowledge. (Tr. 740-43). Dr. Olsson reported seeing Plaintiff monthly for routine visits. (Tr. 740). Dr. Olsson diagnosed Plaintiff with Scheuermann's osteochondrosis, and low back pain status post surgery in August 2009. (Tr. 740). He based his findings on a March 2014 MRI that showed bulging annulus at L4-5, abutting ventral thecal sac. (Tr. 683, 740). He found low-back pain most prominent in the mid and lower lumbar spine area, with constant sharp and stabbing pain most days. (Tr. 740). He noted a reduced range of motion in the back flexion and extension, sensory loss, tenderness, muscle spasms, and impaired sleep. (Tr. 741). He also noted that the medications caused drowsiness, and Plaintiff may have had occasional dizziness. (Tr. 741).

Based on his examinations, Dr. Olsson determined that Plaintiff could walk 1/2 block, sit for 30 minutes at a time, stand for 20 minutes at a time, sit about 4 hours in an 8-hour workday, and stand for 2 hours in and 8-hour workday. (Tr. 741). Plaintiff would also need to shift positions at will from sitting, standing, or walking. (Tr. 741). He found Plaintiff would need 2-3 unscheduled breaks per workday, for 10 minutes each, and Plaintiff would need to elevate her legs about 80% of the time with prolonged sitting. (Tr. 742). He also determined that Plaintiff could rarely lift 10 lbs., occasionally lift less than 10 lbs., never twist or stoop, rarely crouch or climb ladders, and occasionally climb stairs. (Tr. 742). He found Plaintiff would be off task 25% or more in a workday, was capable of low stress work because stress increased pain, would miss about three days of work per month, and would have good and bad days. (Tr. 743). Lastly, he found that Plaintiff's medication would cause drowsiness and may cause occasional dizziness. (Tr. 741). Dr. Olsson supplemented his opinion in December 2017, findings Plaintiff's condition had not improved. (Tr. 1804).

The ALJ determined that Dr. Olsson's records "must be looked upon in the proper context." (Tr. 948). He then acknowledged that Dr. Olsson specialized in pain management. (Tr. 948). He found that "[t]hough these records do confirm the claimant's attempts at treatment, then, it bears noting that the findings contained therein were based primarily upon the claimant's subjective complaints regarding

her experience of pain. The treatment itself was also aimed toward alleviating the claimant's subjective complaints regarding her pain and physical limitations." (Tr. 948). The ALJ then stated that while a person's subjective complaints are important, a determination of whether a person is disabled depends on objective evidence substantiating a person's allegations. (Tr. 948). He continued that the treatment of Plaintiff's pain resulted directly from her complaints of pain when, for example, she performed range of motion exercises or complained of tenderness, which rendered these reports less convincing. (Tr. 948). He concluded that Dr. Olsson's reports generally contained Plaintiff's subjective complaints, and were thus less convincing. (Tr. 948).

He afforded Dr. Olsson's opinion little weight:

> A finding of disability must have a basis in objective medical findings. In the instant matter, while Dr. Olsson's records do consistently relay the claimant's subjective reports, the objective medical evidence simply fails to corroborate the extent of limitations and symptomatology alleged by the claimant. For this reason, then, the undersigned must also accord little weight to the various opinions rendered by Dr. Olsson throughout the longitudinal medical evidence of record. (i.e., Exhibits 10F and 51F). Once more, while Dr. Olsson's records do relay the claimant's subjective complaints and contain findings based on the claimant's subjective reports, the truly objective medical evidence is unconvincing and fails to substantiate the claimant's subjective reports (as well as his opinions).
>
> In comparing the objective medical evidence with Dr. Olsson's opinions, it is evident Dr. Olsson relied quite heavily on the subjective report of symptoms and limitations provided by the claimant. He also seems to have uncritically accepted as

> true most, if not all, of what the claimant reported. Yet, as explained throughout this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Specifically, the objective findings are consistently unpersuasive.

(Tr. 948).

The ALJ heavily relied on Dr. Munoz's opinion to discount Dr. Olsson's opinion. (Tr. 949). The ALJ found that Dr. Munoz suggested that Dr. Olsson's records were unconvincing because some of Plaintiff's studies were "normal," and Dr. Munoz suggested that Dr. Olsson's opinions were based on Plaintiff's history of complaints with no corroboration from objective medical findings. (Tr. 949). The ALJ accorded Dr. Munoz's opinion the "greatest weight" as it was the most consistent with the totality of the objective medical evidence. (Tr. 949). The ALJ concluded, "Overall, complaints and reports of pain, in and of themselves, are insufficient to corroborate the extent of physical limitations alleged by the claimant and as opined by Dr. Olsson." (Tr. 949).[6]

### 3.    Dr. Weiss

On March 6, 2017, Dr. Weiss began treating Plaintiff for back pain in the mid and lower back. (Tr. 844). Plaintiff reported constant thoracic pain radiating to the

---

[6] The ALJ also compared Dr. Olsson's opinions to those of non-examining physician Murray Gilman, M.D. who completed a Medical Source Statement and Interrogatories on July 5, 2016. (Tr. 746-54, 949). Dr. Gilman found Plaintiff much less limited than Dr. Olsson or Dr. Weiss. (Tr. 949). The ALJ did not adopt Dr. Gilman's opinions about Plaintiff's physical capabilities, but did adopt his opinion that at least through July 5, 2016, Plaintiff was not precluded from all work. (Tr. 949).

lumbar region. (Tr. 844). She also reported constant lower back pain radiating to the bilateral hips, buttocks, and right lower extremity down the lateral leg. (Tr. 844). Dr. Weiss found Plaintiff's gait, station, and reflexes in the upper extremities normal, but not in the knee and ankle joints. (Tr. 846). He also found reduced extension, lateral movement, and flexion in the lumbar spine with "psp" spasms, tenderness, and positive leg raises. (Tr. 847). The thoracic spine revealed "psp" spasms and tenderness as well. (Tr. 847). He assessed Plaintiff with severe lower back pain with radiculopathy and some cord compression signs. (Tr. 847). He found Plaintiff's case was highly complex, and recommended she continue with Dr. Olsson for pain management. (Tr. 847). He ordered MRIs of the thoracic and lumbar spine. (Tr. 847).

At a March 20, 2017 exam, Dr. Weiss discussed the March 16, 2017 MRIs of the thoracic and lumbosacral spine and the EMG/NCS (electromyography and nerve conduction study). (Tr. 838-39, 842-43). Dr. Weiss found the EMG/NCS of the right lower extremity showed right L5 radiculopathy. (Tr. 838). He found an abnormal MRI scan of the lumbosacral spine with post-op instrumentation from the T spine to L3 and with slight disc protrusion at L 4-5. (Tr. 839, 843). He also found an abnormal MRI scan of the thoracic spine with an abnormal curvature, degenerative changes, and post-op instrumentation from T2 to L3. (Tr. 839, 842) He assessed Plaintiff with severe lower back pain with radiculopathy and some cord compression signs, herniated nucleus pulposus at L 4-5 with right L5 radiculopathy after T2-T3 surgery

with fusion with hardware. (Tr. 839). He based his opinion on a review of the MRIs and the EMG-NCS RLE and agreed with Dr. Olsson's restrictions based on the neurological tests and exams. (Tr. 839).

Before considering Dr. Weiss's opinion, the ALJ found that from July 2016 through June 2019, the objective evidence remained unconvincing. (Tr. 949). The ALJ reiterated that a significant amount of treatment notes from that period focused on Plaintiff's subjective complaints. (Tr. 949). As for Dr. Weiss's opinion, the ALJ accorded it little weight. (Tr. 950).

> As discussed, while the records do suggest some level of physical limitation, the extent of limitations opined by Dr. Weiss are not supported by the totality of the evidence. Indeed, the level of physical restriction he opined are inconsistent with his own treatment notes which, as discussed above, consistently showed "normal" gait and "normal" motor strength. The inconsistency between his records and his opinions render his opinions less convincing. Once more, the undersigned finds that the opinions set forth by Dr. Munoz are the most consistent with the totality of the evidence.

(Tr. 950).[7]

## C.   Discussion

As stated above, the ALJ relies heavily on non-examining physician Dr. Munoz's opinion that before June 1, 2019, Plaintiff could perform work at the sedentary level with limitations. After that time, the ALJ adopted Dr. Munoz's

---

[7] The ALJ cites hospital records to support some normal exam findings. (Tr. 950). But on these hospital visits, Plaintiff's complaints were related not to her back but to left flank pain, dyspnea, wheezing, and asthma or vomiting and diarrhea. (*Compare* Tr. 950, *with* Tr. 1721, 1730-31, 1741).

finding that Plaintiff met Listing 1.04 and was disabled. (Tr. 948, 949). The ALJ repeatedly discounted the opinions of both Dr. Olsson and Dr. Weiss, asserting that the objective medical evidence failed to support the existence of the physical limitations alleged by Plaintiff and found by Drs. Olsson and Weiss. (*See* Tr. 947, 948 (" By the nature of the treatment, pain management records focus on subjective complaints."), 949 ("Despite the seemingly voluminous nature of the claimant's records, the undersigned reiterates that a significant portion of the claimant's treatment records consist of pain management treatment notes, which again focus on the claimant's subjective complaints. . . . As for the objective findings, however, there is insufficient evidence to substantiate the claimant's subjective reports."), 950 ("In the instant matter, while the imaging does confirm the presence of a severe impairment, the level of severity suggested by the objective medical evidence does not support a further determination that the claimant is incapable of work activity.").

Although the ALJ made it abundantly clear that he believed Dr. Olsson and Dr. Weiss relied mainly if not completely on Plaintiff's subjective complaints, he nonetheless accepted nearly without question Dr. Munoz's finding that Plaintiff equaled Listing 1.04 on June 1, 2019, based on the placement of a spinal cord stimulator in late 2019 or early 2020. (Tr. 981-82). Dr. Munoz acknowledges that there were no MRIs that established a listing, but found that Plaintiff had such severe pain post laminectomy that she needed a spinal cord stimulator because that pain

could not be controlled. (Tr. 983). Thus, he found she met Listing 1.04 and found

because this was such a complicated case, that the onset of disability was "most

likely" six months prior to installation. (Tr. 982-83). The Court does not quibble

with Dr. Munoz's opinion finding Plaintiff disabled on and after June 1, 2019, but it

does disagree with the ALJ's consideration of Dr. Olsson's and Dr. Weiss's

opinions, who both agree that Plaintiff had severe limitations prior to June 1, 2019.

As stated above, Dr. Olsson's office treated Plaintiff monthly from 2012. He

completed a Lumbar Spine Medical Source Statement in 2016, nearly four years

later. (Tr. 743). He based his opinion on the monthly routine visits for low back pain

post 2009 surgery and on a March 2014 MRI, which showed a bulging annulus at

L4-5 abutting a ventral sac. (Tr. 740). Dr. Olsson identified "positive objective

signs" of reduced range of motion for back flexor and extension, muscle spasms, and

tenderness. (Tr. 741). He also stated that Plaintiff's medications would cause

drowsiness and she may have occasional dizziness. (Tr. 741). He found, among other

limitations, that Plaintiff could never twist or stoop. (Tr. 742).[8] Dr. Olsson, a pain

management specialist, had a lengthy treatment history with Plaintiff, explained the

medical evidence that supported his opinion, and was consistent with Dr. Weiss's

opinion and the medical evidence of record.

---

[8] The vocational expert testified that no jobs would be available if an individual would be unable
to twist or stoop. (Tr. 992).

While the ALJ correctly noted that Dr. Weiss found Plaintiff's gait and station normal, strength normal and symmetric in all four extremities, and reflexes normal in upper extremities, Dr. Weiss also found Plaintiff's reflexes not normal in the lower extremities, lumbar spine motions reduced, with spasms, tenderness, and positive single leg raises. (Tr. 838). He ordered and reviewed the MRIs of the thoracic and lumbar spines. (Tr. 842-43). In reaching his opinion as a neurologist, he relied on the abnormal neurological examinations and on abnormal testing results. (Tr. 828). He also included Plaintiff's limitations based on the narcotic medications she took, which diminished her alertness and caused drowsiness. (Tr.830). On January 3, 2018, Dr. Weiss completed an updated form and found Plaintiff had not improved from his last report, based on severe lower back pain with radiculopathy and signs of cord compression, herniated nucleus pulposus L4-5, with L5 radiculopathy, thoracic pain with T2-L3 fusion, and herniated nucleus pulposus at C3-4, C5-6, C6-7. (Tr. 1825).

Dr. Olsson's and Dr. Weiss's opinions are entitled to substantial or considerable weight unless the ALJ can show good cause to the contrary. In this case, Dr. Olsson's and Dr. Weiss's opinions are bolstered by their examinations and by their interpretations of the objective testing they conducted. While there is some evidence of normal examinations throughout the many treatment records, most if not all also include abnormal findings on range of motion, flexion, and extension of the

thoracic and lumbar spine, and lower extremities, and hypoesthesia in the right L2, L3, L4 and L5 distribution. (*See, e.g.*, Tr. 867, 871, 875, 879). Dr. Olsson's and Dr. Weiss's opinions were not conclusory or inconsistent overall with their own and each other's medical records.

The Court recognizes that it may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). And even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). In this case, the Court finds that the ALJ did not show good cause and substantial evidence does not support the ALJ's decision to accord little weight to treating pain management physician Dr. Olsson's and neurologist Dr. Weiss's opinions. Based on this matter being remanded, the Court will also direct the Commissioner to reconsider the opinion of Nurse Practitioner Johns.

## III.   Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the opinions of Dr. Olsson, Dr. Weiss, and Nurse Practitioner Johns given all the medical evidence of

record. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on August 23, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties